IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-03172-M

| | | |
|---|---|---|
| ANDRÉ MICHAEL SPATES EL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TODD E. ISHEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On July 15, 2024, André Michael Spates El ("plaintiff"), a.k.a. Andre Michael Spates, a state inmate proceeding *pro se* and without prepayment of fees, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. See [D.E. 1, 2, 5].

The court first addresses plaintiff's motion seeking to correct his name on the docket. See Mot. [D.E. 6]. The court GRANTS this motion to the extent that directing the clerk to correct the docket to reflect his name as André Michael Spates El satisfies his request.

The court now conducts its initial review under 28 U.S.C. § 1915A and, for the following reasons, dismisses the complaint for failure to state a claim upon which relief may be granted.

Legal Standard:

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a), (b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal

interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). A *pro se* plaintiff's pleading, however, must contain "more than labels and conclusions," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008), and the court need not accept as true any legal conclusions or unwarranted factual inferences, see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Further, a plaintiff also "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

### Plaintiff's Complaint:

Plaintiff generally alleges that defendants – Todd E. Ishee, Secretary of the North Carolina Department of Adult Correction ("DAC"), and Pete Buchholtz, the "Deputy Secretary of Institutions [sic]" – violated his Fourth, Fifth, and Fourteenth Amendment rights on October 18, 2021, and November 20, 2023. See Compl. [D.E. 1] at 3–4.

Plaintiff specifically alleges, *inter alia*, that: defendants both "proceeded to implement and enforce a policy to seize and deny me my property"; he informed defendants he "had not done anything to warrant the taking and denial of my property"; "in an alleged attempt to prevent drugs or contraband from entering the facility," defendants "put out or posted memorandums implementing and forcing me to use an electronic mailing system . . . denying me of my right to my letters, drawings, photos, and other personal mail, without just cause or compensation"; defendants had no probable cause to implement this policy because plaintiff had never been charged with a drug offense, failed a drug test, or been suspected of drug related activity; this policy violates his equal protection rights; this policy continues to the present day. Id. at 4–5.

As to his injury, plaintiff states: "The actions of these men resulted in the loss of my property, costing hundreds of dollars in value for the various items"; and "emotional distress affecting my mental health wellness, due to the sentimental value these items had; causing raised stress levels, anxiety, and depression." Id. at 6.

As to relief, plaintiff states: "I would like to be compensated for my injuries and damages, that punitive damages should also be included, and to also have the mailing policy returned back to how it was prior to the policy change." Id. at 7.

Discussion:

Although prisoners generally have a First Amendment right to receive mail, prison officials may adopt regulations that are "reasonably related to legitimate penological interests," Turner v. Safley, 482 U.S. 78, 89 (1987), and the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world," Thornburgh v. Abbott, 490 U.S. 401, 407 (1989).

Here, plaintiff fails to plausibly allege that the DAC's incoming personal mail policy – purportedly implemented to prevent the inflow of contraband – lacks a "rational relation to legitimate penological interests." Desper v. Clarke, 1 F.4th 236, 244 (4th Cir. 2021); see Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"); Thornburgh, 490 U.S. at 413–15 (noting courts give greater protection to legal versus non-legal mail, and to outgoing versus incoming mail, and that prison security is a legitimate governmental interest); see also Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (noting, "courts have consistently afforded greater protection to legal mail than to non-legal mail"); United States v. Gordon, 168 F.3d 1222, 1228 (10th Cir. 1999) ("[I]n the case of unprivileged incoming and outgoing prison mail, regulation by prison officials is essentially an administrative matter in which the courts will not intervene." (quotation and citation omitted)); cf. Haze v. Harrison, 961 F.3d 654, 656–61 (4th Cir. 2020) (reversing summary judgment as to allegations that a detainee's confidential attorney-client legal mail repeatedly was opened by jail staff outside his presence, copied, and given to prosecutors).

Plaintiff also fails to state a viable Fourth Amendment claim as to his incoming personal mail. See Stroud v. United States, 251 U.S. 15, 21–22 (1919) (finding no Fourth Amendment violation where delivery of a prisoner's mail to the warden accorded with regular practice that was "reasonably designed to promote the discipline of the institution"); see also Villafana v. Clarke, No. 3:17CV512, 2018 WL 1569489, at *4 (E.D. Va. Mar. 30, 2018) ("[A]n inmate's Fourth Amendment rights are not violated when mail is inspected and opened by jail officials." (collecting cases)), aff'd, 738 F. App'x 252 (4th Cir. 2018).

4

Next, because he does not name any federal actors, plaintiff does not state a viable Fifth Amendment claim. See United States v. Hornsby, 666 F.3d 296, 310 (4th Cir. 2012).

Next, to state a viable Fourteenth Amendment due process claim, plaintiff must show that government action deprived him of life, liberty, or property. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Nevertheless, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984); see Mora v. City of Gaithersburg, 519 F.3d 216, 231 (4th Cir. 2008).

Presuming, without deciding, that he has a cognizable property interest in his incoming personal mail, plaintiff still has a meaningful postdeprivation remedy available in state court. Wilkins v. Whitaker, 714 F.2d 4, 6–7 (4th Cir. 1983); but see Couch v. Clarke, 782 F. App'x 290, 292 (4th Cir. 2019) (per curiam) (unpublished) (upholding the district court's finding that a state prisoner "did not have a cognizable property interest in his incoming mail that was destroyed pursuant to the mail policy").

Next, although plaintiff alleges that defendants' actions violate his rights under the Fourteenth Amendment's Equal Protection Clause, these bald, threadbare claims likewise fail to survive initial review. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985) (noting the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly

5

situated and that the unequal treatment was the result of intentional or purposeful discrimination."); Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997) (noting that inmates are not a suspect class under equal-protection analysis).

Finally, because plaintiff's complaint cannot be cured by amendment, dismissal is appropriate, see Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 628 (4th Cir. 2015), and the court declines to exercise supplemental jurisdiction over any lingering state-law claims, see 28 U.S.C. § 1367(c)(3) (granting courts discretion to decline supplemental jurisdiction over a pendent State claim where the court has dismissed all claims over which it has original jurisdiction); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (noting "pendent jurisdiction is a doctrine of jurisdictional discretion" and that, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (holding the district court possesses "inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met").

## Conclusion:

In sum, the court: GRANTS plaintiff's motion [D.E. 6]; DIRECTS the clerk to update the docket to reflect plaintiff's name as André Michael Spates El; DISMISSES the complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1); DECLINES to exercise supplemental jurisdiction over any lingering state-law claims; and DIRECTS the clerk to close the case.

SO ORDERED this 29th day of January, 2025.

Richard E. Myers II
RICHARD E. MYERS II
Chief United States District Judge

6